UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DYLAN LINER, | |
| Plaintiff, | |
| | **Civil Action No.** |
| vs. | |
| NEW TECH MACHINERY CORP., and MAZZELLA LIFTING TECHNOLOGIES, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**COMPLAINT**

Plaintiff, Dylan Liner ("Plaintiff"), respectfully submits the following for his Complaint against Defendants New Tech Machinery Corp. ("NTM") and Mazzella Lifting Technologies, Inc. ("Mazzella") (collectively, "Defendants") and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**<u>NATURE OF THE SUIT</u>**

1.    Plaintiff brings this lawsuit as an individual who used Defendants' WAV Wallformer Machine (hereinafter "Machine" or "Products").[1]

2.    Concisely, the Machines are large rectangular prisms with an internal conveyor system that bend, corrugate, and slice sheet metal to specifications set by the Machine's operator. The Machine has openings at both ends, one for the input of metal, and one for the removal of metal. Once bent to spec, the Machine has a large shear on the exit end that operates like a butcher's

---

[1] https://newtechmachinery.com/machines/roof-wall-panel-machines/wav-wall-panel-machine/

meat clever, forcefully chopping the metal to size. The Products are used to create internal walls for metal buildings, as well as roofs.

3.    Unfortunately, the Products are defective and dangerous because they can cut users and are extremely dangerous. The danger of the Machines lies in the fact that they have no real safeguards for the hazard contained therein. The giant metal shear, as described above, can be operated without a guard and does not have a brake system as to prevent incidental chopping of unintended objects. Simply put, if something is in the shear's path while the shear is operated down to cut, the shear will cut through the object, presuming the shear's force is stronger than the object. Given that the shear is used for cutting metal, the Machine's user guide even states that the shear will cut through users' hands, fingers, or other limbs.[2] The design of the Products results in a dangerous machine in which a user's hand, arm, and fingers can be sliced off.

4.    The Products are unsafe for several reasons, all of which stem from the Product's design and creation. As previously stated, the most critical and unsafe element of this Machine is the shear. The shear of the Machine is a giant metal blade that operates like a guillotine and slices the bent pieces of metal.

5.    Unfortunately, this shear is unsafe. The shear is quite open and exposed and can be operated without any guard or protective measures. The shear does not have a system to prevent user harm and the slicing and amputation of user's arms, hands, or other portions caught in the Machine.

6.    Some illustrations help to put the above text into a more understandable medium[3] :

---

[2]  https://newtechmachinery.com/learning-center/manual/wav-wall-panel-machine-manual/
[3] https://newtechmachinery.com/learning-center/manual/wav-wall-panel-machine-manual/



### Cover Interlock Switches

As a safety feature, the machine is equipped with interlock switches on the covers and guards that need to be removed on a regular basis. The covers with interlock switches are shown in Figure 7.



**EXIT END**



RUN OUT STAND MOUNT
SHEAR
PANEL STRAIGHTENER
CONTROL PANEL
WIDTH ADJUSTMENT HANDLE
DRIVE #12
DRIVE #11
GOLD TOOLING ANGLE LEFT #2
HYDRAULIC MANIFOLD
DRIVE #10
GOLD TOOLING ANGLE RIGHT
HYDRAULIC TANK
DRIVE #9
GOLD TOOLING ANGLE LEFT #1
HYDRAULIC TANK FILLER CAP
DRIVE #8

**LEFT SIDE**          **RIGHT SIDE**

DRIVE #7
HYDRAULIC MOTOR
MAIN DRIVE GEARS
DRIVE #6
DRIVE #5
MOUNT PAD
DRIVE #4
ELECTRIC MOTOR
POWER SUPPLY BOX
DRIVE #3
BATTERY (UNDER THE POWER SUPPLY BOX)
GAS ENGINE
DRIVE #2
VFD ENCLOSURE
DRIVE #1
RIGHT ENTRY GUIDE
LEFT ENTRY GUIDE
ENTRY DRUM ASSEMBLY
**MATERIAL FLOW**
**ENTRY END**



PIVOTING SHEAR DIE

SHEAR BLADE
LOCATING PIN

PIVOTING SHEAR DIE

CAM FOLLOWER
& SHAFT

CHAPTER 9
# SHEAR ASSEMBLY





## JURISDICTION AND VENUE

7.      This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under 28 U.S.C. § 1332, because (1) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) Plaintiff is a citizen of a different state than both Defendants.

8.      This Court has personal jurisdiction over Defendant NTM because Defendant NTM has purposefully availed itself to this district's jurisdiction and authority, given Defendant's minimum contacts within this District due to Defendant's marketing, advertising, and sale of items throughout this District.

9.      This Court has personal jurisdiction over Defendant Mazzella because it has conducted substantial business in this judicial district, has significant connections in this district in that it is the parent company of NTM.

10.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant sells and distributes its machinery throughout the United States and within this District.

## PARTIES

*Plaintiff*

11.     Plaintiff Dylan Liner is a citizen and resident of South Carolina. Plaintiff lives in Murrells Inlet, S.C. which is located within Horry County, S.C.

12.     Plaintiff used Defendants' Machine in July of 2021 in the scope of his employment.

13.     When using Defendants' Machine, Plaintiff's hand became caught in the Machine's shear. Plaintiff lost portions of his hand due to the shear coming into forceful contact with it.

14.     Plaintiff used the Machine as intended and as described in Defendants' user manual.

***Defendants***

15.    Defendant NTM is a Colorado corporation that has been around since 1991. Defendant NTM specializes in producing machines that assist in the production of metal buildings.

16.    Defendant has over 30 years of experience producing products similar to the Machine(s) at issue in the current matter.

17.    Defendant NTM has its headquarters and principal place of business at 16265 E 33rd Dr, Suite 40, Aurora, CO 80011.

18.    In 2015, NTM was acquired by Defendant Mazzella.

19.    Defendant Mazzella is an Ohio corporation that is involved with all sorts of industrial products. Defendant Mazzella has its principal place of business located at 21000 Aerospace Parkway, Cleveland, OH 44142.

20.    Defendant Mazzella is a large corporation with ownership stakes in all sorts of companies within these sorts of industries similar or analogous to Defendant NTM.

## FACTUAL ALLEGATIONS

### Plaintiff's Background, Experience with the Machine

21.    At all times relevant, Plaintiff was employed by a corporation that used Defendants' Machine.

22.    Plaintiff only occasionally used Defendants' Machine in the scope of his job.

23.    Plaintiff used the Machine in July of 2021 and was allowed to use the Machine without its guard, as the Machine can function without its guard installed, which covers the shear and prevents incidental contact with the shear.

24. While using the Machine in the scope of his job, Plaintiff experienced a malfunction, in which water contacted the controller, and Plaintiff suffered amputation of his fingers and hands.

25. Defendants' design, production, and marketing are the causes for Plaintiff's injury. Had Defendants designed a machine in with proper shear protections as well as any other sort of guard or brake that would have stopped the Machine's shear in the event of incidental contact with the shear.

26. As a result of Defendants' improper design, Plaintiff suffered damages.

**The Logistics of Controlling the Machine**

27. As designed, the Machine's control panel is directly next to the shear itself, as seen below[4]:



---

[4] https://newtechmachinery.com/learning-center/manual/wav-wall-panel-machine-manual/



28. The control panel machine has several buttons, as seen above.

29. The most critical of these buttons, as it relates to the current matter, are the emergency stop buttons and the shear controls.

30. The shear up button, as pictured, makes the shear go up, thus not cutting.

31. The shear up button, as seen above, does not function when the Machine is set to automatic mode.

32.    The Machines are often put into automatic mode as that can speed up and automate the process as to prevent any human error.

### The Machine's Lack of a Proper Guard – Defendants' Implicit Suggestion of Using Machine with No Guard

33.    As discussed above, the Machines have a large shear that does not need a guard to function.[5]

34.    This guard protects users from the strong and dangerous shear.

35.    The function of the Machine without a proper guard is mentioned within the user manual explicitly.

> **Shear Down:**  The shear will travel down while the button is held and stop when it is released.
>
> Note:  The Shear buttons will not operate if one of the machine guards has been removed. If the shear must be operated with the guards removed switch the machine into manual mode and use the two-button controls on the sides of the control panel. Ensure that the shear path is clear before pressing the buttons.

36.    The shear's strength, enough to cut through human limbs, is also explicitly mentioned.

37.    Through both above-mentioned acknowledgements, Defendants have knowingly and intentionally created a Machine that can and does cut through its users without any protections.

> **SHEAR ADJUSTMENTS** (Figure 23)
>
> The shear is adjusted at the factory and should not need to be adjusted. However, if the panel is rubbing on the shear dies or hanging up on them follow the procedure below to correct the problem. **WARNING:  When working near the shear it is essential that you turn off the machine and remove the power. The blades are powerful and can cut through your hand or finger.**

---

[5] https://newtechmachinery.com/learning-center/manual/wav-wall-panel-machine-manual/

38.    The lack of a proper guard places the user in a position in which their hand or other body parts can be chopped by the shear as there is nothing to protect the user from direct contact with the shear.

39.    Given the fact that Defendants placed the user controls of the Machine inches away from the shear, users are by default next to the shear in its use.

40.    Given the nature of the machine, in which a user has to often pull or handle sheet metal that is within the Machine, the user and the shear are in close if not direct proximity.

41.    This lack of a guard, as discussed above, is solely due to Defendants' design of the Machine.

42.    Defendants could have designed a Machine in which the guard was required for use and operation, but they did not.

43.    Defendants created a machine in which a user is allowed to stick their hand underneath a large blade that is stronger than human skin, bones, and tissue.[6]

44.    In fact, the Machine functions better and more efficiently without its guard. Defendants even note that the guard must be taken off at times and the Machine can be ran without its guard.

45.    When ran with the guard attached, the Machine is often prone to jamming and malfunctions, as implied by the user manual.[7]

46.    All things considered, NTM has created a Machine that is neither safe nor operable at the same time and has promoted users to remove the guard, even letting users know that the guard can be taken off if needed.

---

[6] https://newtechmachinery.com/learning-center/manual/wav-wall-panel-machine-manual/
[7] *Id.*

47.    This guard is the only thing standing between a user's hand and the strong metal shear, which is required to continually chop strong sheet metal.

**The Lack of a Proper Brake System, or any other Safeguards, Other Than the Guard**

48.    Given the strong nature required of the shear, hours upon hours of cutting firm sheet metal, the shear has no brake system or other safety measure to prevent the cutting or amputation of body parts. In short, once the shear goes down, it goes through whatever is below.

49.    This sort of design is avoidable. Many other machines that cut all have some sort of brake. Machines such as chainsaws, table saws, and other sorts of cutting tools have systems in place that will prevent the incidental cutting of the machine's user, or at least mitigate some of the danger faced by operators.[8]

50.    Defendants could have, and should have, designed a safer Machine in which cutting would be mitigated or even prevented.

**Defendants' Unsafe Machine's Maintenance Mode**

51.    Additionally, even in maintenance mode, the Machine and shear can function.

52.    This is done by another user holding buttons, moving a user away from the normal operating buttons of the control panel.

SHEAR DOWN & MAINTENANCE MODE SHEAR DOWN
Press and hold the Shear Down button to activate the shear and cut off the panel. The shear will return to the up position as soon as the button is released. **NOTE: All the covers must be on the machine and the shear guard must be attached or the Shear Down button will not function.** If the shear must be operated with the covers or shear guard removed, during setup for example, then use the Maintenance Mode Shear Down Buttons on the sides of the control panel. Both buttons must be pressed at the same time.

53.    It is highly dangerous to have a user working on the Machine whilst the Machine is in maintenance mode because the Shear can still fall down while down someone is working on

---

[8] https://www.sawstop.com/; https://scottautomation.com/en-us/bladestop

the Machine. And, as stated before, Defendants have acknowledged that the shear itself will need maintenance.

54.    Defendants have created a Machine that, when put into the proper working mode, can cut and seriously injure its users.

**Defendants' Machine's Dangerous Automatic Mode**

55.    In automatic mode, the shear up button for the Machine does not work. The shear can only be moved from the down position to the up position by way of the emergency stop.

56.    Typically, users press the shear up button to move the shear upwards, thus not cutting.

> SHEAR UP
> This is an indicator light that tells the user if the top of stroke limit switches on the shear are activated. If the shear is up the light should be on. The drives will not function unless both the top left and top right limit switches sense that the shear is up. **NOTE: When the AUTO-MAN switch is in Auto, the Shear Up light is disabled.**
>
> AUTO-MAN SWITCH
> Turn this switch to Auto in order to run the machine in automatic mode with the touchscreen. When in Auto mode all of the buttons will be disabled except for the Emergency Stop and Motor Start buttons. All other controls should be done with the touchscreen. Turn this switch to Manual in order to run the machine in manual mode. For instance, during setup and testing it is recommended to switch to Manual. Manual mode can also be used if the touchscreen is not functioning correctly. In this scenario the Remote Limit Switch can be attached to the runout table in order to produce panels at a desired length.
>
> FORWARD REVERSE SWITCH

57.    In sum, when the Machine is in automatic mode, the user loses the controls that would typically allow for normal safety.

58.    The difference of buttons creates an unreasonable and unneeded delay in the prevention of cutting or mitigating the danger of cutting.

59.     Given the strength of the machine, the speed in which it cuts, and the time it takes to cut through human limbs, even microseconds are critical in preventing more loss than already inflicted.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE

60.     Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

61.     Defendants have a duty to produce safe Machines.

62.     Defendants breached this duty by producing an unsafe Machine.

63.     This breach caused damages to Plaintiff in that he was injured, emotionally harmed, and now has diminished earning capacity.

64.     The unsafe Machine, produced by Defendants, caused Plaintiff's damages, both factually and proximately.

65.     But for Defendants' production of its unsafe Machine, Plaintiff would not have been harm / damaged.

66.     It is foreseeable that the production of an unsafe machine would cause harm and damages to the consuming public, such as Plaintiff.

67.     As a direct and proximate result of Defendants' actions, Plaintiff has been harmed in that the has suffered injury, financial losses, emotional suffering, lost wages.

68.     Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### SECOND CAUSE OF ACTION
### STRICT LIABILTY: DESIGN DEFECT

69.     Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

70.     Defendants are sellers, specializing in the sale of the Machines and similar products.

71.     The Machines are expected to reach the consuming public in a safe condition without modification between the custody of Defendants.

72.     Defendants produced Machines that are dangerous and unreasonably unsafe as designed. The Machine's components, particularly the guard, the operating system, and the shear itself are unsafe as they can chop through whatever is in their path, including the operator.

73.     Defendants specifically designed these Machines to be used without the guard.

74.     The Machines were not altered by Plaintiff or any third party.

75.     Defendants' design defect, the fact that the Machine can be operated without the guard, is the direct and proximate cause of Plaintiff's injury and damages.

76.     Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### THIRD CAUSE OF ACTION
### STRICT LIABILITY: FAILURE TO WARN

77.     Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

78.     Defendants are a seller engaged in the product, marketing, and sale of the Machines. Defendants have specialized in this industry for over thirty years, as mentioned above.

79.     As discussed above, the Machines are dangerous as they can easily cut through a user's limbs.

80.     Defendants knew of this danger as Defendants documented such danger through small, innocuous mentions throughout their user manual.

81.    Defendants had a duty to adequately warn of the true dangers related to the use of the Machine.

82.    Defendants breached this duty by not adequately warning of such a danger. Defendants never notified Plaintiff of the true nature of its dangerous Machines.

83.    This breach directly and proximately caused Plaintiff's damages.

84.    Had Plaintiff been adequately warned of such a danger, Plaintiff would not have used the Machine.

85.    Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

<u>**FOURTH CAUSE OF ACTION**</u>
**NEGLIGENT MISREPRESENTATION**

86.    Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

87.    Through their advertising and the course of their regular business, Defendants made representations to Plaintiff concerning the function, operability, and safety of the Machines.

88.    Defendants did not practice reasonable care in the above-mentioned design, creation, production, sale, and marketing of the Machines.

89.    Defendants made these statements to guide consumers, such as Plaintiff, in the transactional process.

90.    Defendants were aware that the statements about the safety and functionality of their Machines were the sole basis for Plaintiff to use the Machines, and they knew that these statements would be trusted and depended upon.

91.    Plaintiff would not have used the Machines without such statements and assertations put forth by Defendants.

92.     Defendants intended that Plaintiff rely on the representations made by Defendants regarding the Machines.

93.     Plaintiff reasonably relied upon such representations and omissions to his detriment as he suffered damages.

94.     By reason thereof, Plaintiff has suffered damages in an amount to be proven at trial.

95.     Due to Defendants' conduct, Plaintiff was damaged by Defendants in that Plaintiff has been deprived of his benefit of the bargain and loss of purchase price and has missed travel opportunities that he will never get back due to lost time and expenses.

96.     Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' negligent misrepresentation of the Machines.

**FIFTH CAUSE OF ACTION**
**FRAUD BY OMISSION**

97.     Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

98.     Defendants made a fraudulent misrepresentation of material fact in that Defendants stated that the Machines would safely cut, bend, or corrugate sheet metal, or otherwise fulfill their intended purposes.

99.     These Machines did not provide safe use, which was the entire premise of Plaintiff using the Machine.

100.     Plaintiff relied on the above misrepresentation.

101.     Plaintiff was justified in relying upon the above misrepresentation that Defendants' Machines would be safe.

102.     As a direct and proximate cause of Defendants' conduct, Plaintiff was damaged by Defendants.

103.    Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### SIXTH CAUSE OF ACTION
### Strict Product Liability for Misrepresentation

104.    Plaintiff incorporates Paragraphs 1-59 as if fully set forth herein.

105.    Defendants were engaged in the business of selling Machines for cutting, bending, or otherwise forming sheet metal.

106.    Defendants misrepresented the material fact that its Machines were safe to use.

107.    This fact is material because it is the entire nature of the Machines themselves and Plaintiff would not have purchased the Machine had he known of the true nature of the Machines.

108.    Defendants' misrepresentations were made to the public at large and potential consumers through Defendants' advertising and marketing.

109.    Plaintiff was and is a person who reasonably expected to use the Machines as marketed by Defendants. This reasonability is based upon the fact that Plaintiff is a consuming member of the public who used the Machine, relying on Defendants' marketing.

110.    It is reasonably foreseeably that Plaintiff would be harmed by Defendants' misrepresentation.

111.    Plaintiff suffered damages due to Defendants' misrepresentation.

112.    Due to Defendants' conduct, Plaintiff was damaged by Defendants in that Plaintiff has been deprived of his benefit of the bargain and loss of purchase price and has missed travel opportunities that he will never get back due to lost time and expenses.

113.    Plaintiff seeks actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## SEVENTH CAUSE OF ACTION
## INJUNCTIVE AND DECLARATORY RELIEF

114.    Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

115.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

116.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

117.    Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

118.    An actual controversy has arisen in the wake of the Defendants' Machine production, regarding Defendants' present and prospective common law and other duties to reasonably safeguard its customers against the dangers of its Machines and whether Defendants are currently redesigning any of its Machines adequate to protect Plaintiff from further injury.

119.    Plaintiff alleges that Defendants' safety measures remain inadequate. Plaintiff will continue to suffer injury because of the unsafe nature of the Machines.

120.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Ordering that Defendants stop selling the Machines as currently designed;

b. Ordering that Defendants redesign its Machines as to provide for adequate safety measures;

c. Declaring that Defendants have breached, and continues to breach, their legal duty by failing to employ reasonable measures to protect consumers from the dangerous Machines.

121.    The Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect the Machine's users.

122.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event that Defendants do not fix the risks inherent to the Machine. The risk of another incident, similar to Plaintiff's, is real, immediate, and substantial.

123.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued.

124.    Among other things, if Defendants are allowed to continue to produce unsafe Machines, Plaintiff will likely be subjected to damages and other harms described herein.

125.    On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective safety measures is relatively minimal, and Defendants have preexisting legal obligations to employ such measures.

126.    Issuance of the requested injunction will not do a disservice to the public interest.

127.    To the contrary, such an injunction would greatly benefit the public because the Machines would be safely produced and/or designed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgement against Defendants as to each and every count, including:

A. An order awarding actual damages in an amount to be determined by a jury;

B. An order enjoining Defendants from selling the Machines;

C. An order enjoining Defendants from suggesting or implying that the Machines are effective for their intended purpose of safely creating metal panels;

D. An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

E. An order awarding declaratory relief and any further retrospective of prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F. An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

G. An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiff as a result of any wrongful or unlawful act or practice;

H. An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I. An order awarding attorneys' fees and costs to Plaintiff; and

J. An order providing for all other such equitable relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 2, 2024                    Respectfully Submitted,

*/s/ Paul J. Doolittle*
Paul J. Doolittle (Fed ID #6012)
**POULIN | WILLEY**
**ANASTOPOULO, LLC**

32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com